UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

*CR 20-18 MJD*

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | **INFORMATION** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| | ) | 18 U.S.C. § 1349 |
| v. | ) | |
| | ) | |
| AISHIA RENEE BELL, | ) | |
| | ) | |
| Defendant. | ) | |

THE UNITED STATES ATTORNEY CHARGES:

## **INTRODUCTION**

At times relevant to the Information:

1.      Victim Organization 1 was a non-profit organization in the greater Minneapolis-St. Paul, Minnesota area.   Victim Organization 1 belonged to a network of non-profit organizations that had locations throughout the United States.

2.      Victim Organization 1's mission was to alleviate poverty, including by providing housing and related services to the homeless.   Victim Organization 1 relied on funding from private donors, charitable foundations, and the United States Department of Housing and Urban Development, among others, to provide these services.

3.      As part of its work to help the homeless, Victim Organization 1 made direct payments to landlords and other vendors (collectively "vendors"), who provided housing and related services to the organization's clients.

SCANNED
JAN 29 2020
U.S. DISTRICT COURT MPLS

*United States v. Aishia Renee Bell*

4.     Victim Organization 1 required vendors to provide supporting documentation with a request for program funds.   For example, landlords were required to provide a signed lease agreement and Internal Revenue Service (IRS) Form W-9 Request for Taxpayer Identification Number (TIN) and Certification (IRS Form W-9).   To complete the IRS Form W-9, a vendor was required to certify under penalties of perjury that, among other things, the TIN was correct and belonged to the vendor.   For an individual serving as a vendor, the TIN was usually the individual's Social Security Number (SSN).

5.     Prior to disbursing program funds to a vendor, Victim Organization 1 also required its employees to submit a written check request along with the vendor's supporting documentation.   Approval from a program manager or other supervisor from Victim Organization 1 was required before submitting the request to Victim Organization 1's accounts payable department for approval.   If approved, accounts payable then transmitted a request to a bank via email to disburse a check directed to the vendor.

6.     Defendant **AISHIA RENEE BELL** resided in the District of Minnesota.

7.     Beginning no later than in and around April 2012, and continuing until in and around June 2017, employees of Victim Organization 1 (collectively "employee coconspirators"), including defendant **BELL**, who worked on a program that provided housing assistance to the homeless, devised a scheme to defraud Victim Organization 1 of

*United States v. Aishia Renee Bell*

charitable funds by recruiting friends and associates, to pose as vendors providing services

to fictitious homeless clients.

## COUNT 1
(Conspiracy to Commit Wire Fraud)

8.      The allegations contained in paragraphs 1 through 7 of this Information are

realleged and incorporated here.

9.      Beginning no later than in and around November 2014, and continuing until

in and around February 2019, in the State and District of Minnesota, the defendant,

**AISHIA RENEE BELL,**

with others known and unknown to the United States Attorney, did knowingly conspire

and agree to commit an offense against the United States, namely:

> To knowingly devise and participate in a scheme and artifice
> to defraud Victim Organization 1, and to obtain and retain
> charitable funds from Victim Organization 1, by means of
> materially false and fraudulent pretenses, representations, and
> promises, in violation of Title 18, United States Code, Section
> 1343, as further described below.

*Manner and Means of the Conspiracy*

10.     It was part of the conspiracy that no later than in and around November 2014,

C.L.C. recruited **BELL** to participate in a scheme to defraud Victim Organization 1 of

charitable funds intended to help the homeless.   Specifically, C.L.C. tasked **BELL** with

recruiting at least one member of the conspiracy to pose as a vendor providing services to

fictitious homeless clients ("vendor coconspirator"), namely **BELL's** long-time

3

*United States v. Aishia Renee Bell*

boyfriend's close friend, T.L.B.

11.    To induce Victim Organization 1 into giving vendor coconspirators money and to conceal that the homeless clients whom they claimed to serve were fictitious, employee coconspirators, including **BELL,** directed vendor coconspirators, including T.L.B., to provide name, SSN, and other identifying information to complete fraudulent IRS Forms W-9, lease agreements, and check requests that falsely claimed to provide housing to homeless clients.  In fact, as defendant **BELL** knew, vendor coconspirators like T.L.B. provided no housing or other services to Victim Organization 1's clients, and was not entitled to Victim Organization 1's funds.

12.    It was further a part of the conspiracy that **BELL**, with assistance from and at the direction of her employee coconspirator, C.L.C., submitted the fraudulent check requests and supporting documentation to Victim Organization 1's accounts payable department through multiple means, including via email.

13.    It was also part of the conspiracy that **BELL** and her employee coconspirator, C.L.C., sought to facilitate the issuance of the checks, minimize scrutiny on fraudulent check requests by accounts payable employees, and to pressure accounts payable employees to disburse funds by sending emails to accounts payable employees about the check requests.  For example, on or about June 24, 2015, **BELL** emailed an accounts payable employee, stating, "[A]fter talking to the landlord [T.L.B.] he states that he really need [sic] the check," and asked, "Is there any way that this can be cut by tomorrow[?]"

4

*United States v. Aishia Renee Bell*

In response, accounts payable issued the requested check to vendor coconspirator T.L.B. on or about the next day.

14.     Among the writings, signs, signals, pictures, and sounds that defendant **BELL** caused to be transmitted between at least in and around November 2014 and in and around June 2017 by means of wire communication in interstate and foreign commerce for the purpose of executing the scheme and artifice to defraud Victim Organization 1 were approximately 69 requests from Victim Organization 1 to its bank for checks totaling approximately $166,785.

15.     In reliance on the fraudulent check requests and supporting documentation, as well as **BELL's** false representations via email and otherwise, accounts payable emailed Victim Organization 1's bank to request disbursement of charitable funds in checks directed to vendor coconspirator T.L.B.

16.     In furtherance of the scheme, **BELL** provided checks to T.L.B. in person and via employee coconspirator C.L.C.

17.     In furtherance of the scheme, **BELL** instructed T.L.B. to cash the checks and divide the proceeds with her, and in some cases, another employee coconspirator, which they diverted to their personal use.

18.     On or about May 23, 2017, Victim Organization 1 terminated **BELL's** employment due to unsatisfactory performance, including performing work for a manager other than her own, namely C.L.C., and overpayment of rent to clients other than her own,

*United States v. Aishia Renee Bell*

which in fact was later revealed to be related to **BELL's** activities in furtherance of the scheme to defraud Victim Organization 1.

19.    Even after Victim Organization 1 terminated **BELL's** employment, **BELL** sought to conceal the scheme to defraud Victim Organization 1 and directed coconspirator T.L.B. to conceal the full scope of the conspiracy by attempting to dissuade T.L.B. from cooperating with law enforcement, as well as by advising T.L.B. to lie to law enforcement about their relationship and involvement in the conspiracy.

20.    **BELL** also lied to law enforcement in an effort to conceal her involvement in the conspiracy.   For example, on or about February 14, 2019, **BELL** stated that she did not know T.L.B., and was unaware that he was not a legitimate landlord providing services to Victim Organization 1 clients.   In fact, as she well knew, she had known T.L.B.—a close friend of her long-term boyfriend—for years, had recruited him and supervised him in the scheme, and called T.L.B. prior to T.L.B.'s interview with law enforcement on or about February 6, 2019.

All in violation of Title 18, United States Code, Section 1349.

*United States v. Aishia Renee Bell*

## **FORFEITURE ALLEGATIONS**

Count 1 of this Information is incorporated here for the purpose of alleging forfeitures pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

As the result of the offense alleged in Count 1 of this Information, the defendant shall forfeit to the United States pursuant to Title 18, United States Code, Section 981(a)(1)(C), and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violations of Title 18, United States Code, Section 1349.

If any property is unavailable for forfeiture, the United States intends to seek the forfeiture of substitute property as provided for in Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c).

All in violation of Title 18, United States Code, Sections 1349 and 981(a)(1)(C), and Title 28, United States Code, Section 2461(c).

Dated: 1/29/2020

ERICA H. MacDONALD
United States Attorney

BY: MIRANDA E. DUGI
Attorney ID No. 5140546 (NY)
Assistant United States Attorney